IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**BETTINA IRVING**                                                                  **PLAINTIFF**

**V.**                              **CASE NO. 3:14CV00277-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Bettina Irving appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On April 4, 2012, Ms. Irving protectively filed for DIB benefits due to heart disease, hiatal hernia, anxiety, high blood pressure, acid reflux, uterine cysts, and a missing kidney. (Tr. 174) Ms. Irving's claims were denied initially and upon reconsideration. At Ms. Irving's request, an Administrative Law Judge ("ALJ") held a hearing on August 23, 2013 where Ms. Irving appeared with her lawyer. At the hearing, the ALJ heard testimony from Ms. Irving and a vocational expert ("VE"). (Tr. 27-52)

The ALJ issued a decision on October 9, 2013, finding that Ms. Irving was not disabled under the Act. (Tr. 11-22) On October 22, 2014, the Appeals Council denied Ms. Irving's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Irving, who was fifty years old at the time of the hearing, has a GED, and past relevant work experience as a kennel attendant, salesperson, janitor, and head waitress. (Tr. 32-33, 48)

## II.     Decision of the Administrative Law Judge[1]

The ALJ found that Ms. Irving had not engaged in substantial gainful activity since May 1, 2011, and that she had the following severe impairments: chronic heart failure, hypertension, hiatal hernia, mood disorder, and uterine fibroids with irregular bleeding. (Tr. 13)  The ALJ also found that Ms. Irving did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 14)

According to the ALJ, Ms. Irving had the residual functional capacity ("RFC") to perform light work where she is not exposed to the elements.  The work would need to be simple, routine, and repetitive with simple, direct, and concrete supervision.  (Tr. 15)  The VE testified that an individual with these limitations could work as a fast food worker and cashier II.  (Tr. 49)

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g).

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

After considering the VE's testimony and other evidence, the ALJ determined that Ms. Irving could perform a significant number of other jobs existing in the national economy, and found that Ms. Irving was not disabled.

## III. <u>Analysis</u>

### A. **Standard of Review**

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. **Ms. Irving's Arguments for Reversal**

Ms. Irving argues that the Commissioner's decision should be reversed because the ALJ: (1) disregarded the opinion of Dr. Chuang; and (2) failed to include mental limitations in the RFC. (Docket entry #11)

### 1.     Dr. Chuang

Ms. Irving argues that the ALJ erred by disregarding an evaluation by Dr. Chuang. In a December 20, 2010 medical source statement, Dr. Chuang concluded that, in an eight-hour workday, Ms. Irving could sit for no more than four hours, stand no more than two hours, and walk no more than an hour. The rest of the time would be spent resting. (Tr. 230) He also determined that she could never push/pull, climb stairs and ladders, balance, or stoop. (Tr. 231-232)

The ALJ gave Dr. Chuang's opinion little weight because it was contrary to the evidence as a whole. First, the ALJ noted that Ms. Irving "admitted to activities beyond that opined by the doctor." (Tr. 20) For example, Ms. Irving testified that she was working part-time in a kennel and also spent time painting and cleaning out furniture, boxes, and trash from a home she is living in. (Tr. 31-32) Second, after the alleged onset date, Ms. Irving worked at a kennel, at Lowe's, and as a janitor. (Tr. 41) The ALJ properly considered the fact that Ms. Irving continued to work after her alleged onset date – though not at a substantially gainful level – because "[w]orking generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). Importantly, Ms. Irving left the jobs at Lowe's and as a janitor for reasons unrelated to her alleged inability to work. (Tr. 33-34) When asked if there were any jobs she could do, Ms. Irving responded, "I'm sure that maybe there's something out there . . . Jobs are so hard and few and far between too . . . I have tried finding a job." (Tr. 42)

The ALJ also considered the fact that Ms. Irving's heart issues had improved since Dr. Chuang's evaluation. The ALJ noted that Ms. Irving believed her ejection fraction was 20-25% (when she was still smoking and possibly using illegal drugs) in 2008, but shortly thereafter it was up to 50%. (Tr. 43)  In April 2013, Ms. Irving's ejection fraction was 58%, and her heart tests were all "normal." (Tr. 503, 530)

Ms. Irving's unclear drug-use history is also relevant. She testified that she had used methamphetamine as recently as early 2012, but at a 2010 hearing, she stated that she had not used methamphetamine since 2008. (Tr. 35-37, 74-75)  Additionally, medical records repeatedly show "no history of drug use," which is inconsistent with her testimony. (Tr. 254, 269, 283)  Because methamphetamine use undoubtedly would negatively affect Ms. Irving's heart condition, if and when she was using is relevant in weighing her credibility regarding the severity of her alleged impairments.

Finally, the ALJ properly noted that Ms. Irving had minimal limitations in her activities of daily living. (Tr. 340)  Additionally, many of the medical records after the alleged onset date are related to isolated incidents (such as not taking her medication) or involve issues unrelated to the alleged impairments. (Tr. 252, 257, 287, 327)

### 2. Mental Health Limitations

Ms. Irving asserts that the ALJ should have considered her mental health limitations in the RFC. The ALJ did consider her mental limitations when he restricted her to work that is simple, routine, and repetitive with simple, direct, and concrete supervision. (Tr. 15)  Additionally, at a June 7, 2012 mental evaluation, Ms. Irving told

the doctor that her "depression did not affect her ability to work." (Tr. 337) After an evaluation in August 2011, the doctor determined that Ms. Irving could cope with the typical mental demands of work-like tasks, could complete tasks, and could attend and sustain concentration on basic tasks. (Tr. 243) A different examining doctor reached the same conclusion in June 2012, but noted that Ms. Irving might have issues completing tasks in a timely manner "because of her expansiveness and tangential thought pattern." This issue was addressed, however, in the RFC determination. (Tr. 340) Finally, the ALJ properly considered the fact that Ms. Irving had not received any mental health treatment since the alleged onset date. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment).

### IV.  Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Ms. Irving's appeal is DENIED, and the Clerk of Court is directed to close the case. The hearing scheduled for November 5, 2015, is cancelled.

IT IS SO ORDERED, this 14th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE